UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| RICHARD A. THOMAS,<br><br>         Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>         Defendant. | Civil Action No. 21-CV-11497-AK |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A. KELLEY, D.J.**

Plaintiff Richard A. Thomas ("Thomas") has filed this negligence action against Defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2675. Thomas was a truck driver for a company that had a contract with the United States Postal Service ("USPS") to move mail shipments from USPS sorting facilities to local post offices in Massachusetts. Thomas claims that he injured his ankle during a delivery while using a defective pallet jack provided to him by USPS. Defendant has filed a motion for summary judgment [Dkt. 27], which Thomas opposes [Dkt. 35]. For the following reasons, Defendant's motion for summary judgment [Dkt. 27] is **DENIED**.

**I.     BACKGROUND**

In evaluating a motion for summary judgment, the Court relies on the parties' statements of material facts, responses thereto, and any attached exhibits the parties have submitted. The Court accepts as true each material fact to the extent it has not been disputed by the opposing

party and considers contested each material fact that one or both parties has disputed. Unless otherwise noted, the facts below are undisputed.

On March 18, 2018, Thomas applied for a job at R&F Transportation ("R&F") as a truck driver. [Dkt. 26 at ¶ 3; Dkt. 36 at ¶ 3].[1] R&F was contracted to pick up large shipments of mail from USPS sorting facilities and deliver them to local post office locations in Massachusetts. [Dkt. 36 at ¶ 4]. As an employee, Thomas worked approximately six days per week and made three or four deliveries per night to post offices in Hingham, Hanover, Cohasset, and Hull, Massachusetts. [Id. at ¶¶ 6-8]. Thomas typically started his shifts around 1:00 a.m. and drove to Hingham, where there were no employees onsite until after 3:00 a.m. [Id. at ¶¶ 5, 9-10].

Sometimes the mail was loaded into Thomas' truck on a pallet, which is a portable platform, requiring Thomas to use a pallet jack to transport the mail from the truck to the inside of the Hingham Post Office. [Id. at ¶¶ 11-16]; see Stevenson v. Diebold, Inc., 422 F.2d 1228, 1230 (9th Cir. 1970) (providing definition of pallets as portable platforms). A pallet jack is a basic, manual forklift on wheels that is used to move cargo placed on pallets. [Dkt. 36 at ¶ 14]. Since the R&F trucks did not have space to store a pallet jack, USPS employees typically left pallet jacks outside the building for R&F drivers to use. [Id. at ¶¶ 15-16]. At the Hingham Post Office, Thomas typically used a key that opened the door to the inside of the building, but he did not have access to the area where the pallet jacks were stored. [Id. at ¶¶ 11, 21].

Between mid-March 2018 and April 29, 2018, Thomas routinely used the pallet jacks at the Hingham Post Office. [Id. at ¶ 21]. Thomas claims he primarily worked with a defective pallet jack that was "barely usable," explaining that the "pallet jack routinely left out . . . was

---

[1] Defendant submitted a statement of material facts [Dkt. 26] with its motion for summary judgment, which Thomas responded to [Dkt. 36]. Thomas did not submit a separate statement of facts. For the sake of brevity, the Court will cite to Thomas' response to Defendant's statement of facts, which includes Defendant's original statements of fact.

2

very old and had wheels that did not turn and could not be moved without a great deal of force and strength." [Id. at ¶¶ 22, 24]. Defendant counters that the pallet jack was "useable" but "just didn't work as well." [Id. at ¶ 24]. Still, Defendant acknowledges that Thomas "perceived that one of the pallet[] jacks he had to use at the Hingham Post Office was very old and heavy, was rusty, didn't roll well because of 'old hydraulics,' was 'hard to pull,' and lacked rubber on one part of the handle," and that Thomas "had to zigzag" the pallet jack to move the mail. [Id. at ¶¶ 22-23 (citations omitted)]. While the parties dispute the usability of the pallet jack, they do not dispute that Thomas used that defective pallet jack to deliver the mail for six weeks. [Id. at ¶¶ 24-25].

The parties largely disagree about the extent of Thomas' complaints about the pallet jack at issue, in addition to USPS' knowledge of and response to those complaints. Thomas asserts that he complained "a lot" to USPS employee Marco DiCienzo ("DiCienzo") about the pallet jack. [Id. at ¶ 27]. The parties agree that on April 23, 2018, DiCienzo informed USPS employees that the door to the Hingham Post Office had been locked, which resulted in a missed mail delivery, and that he was aware that the team at the Hingham Post Office occasionally did not leave a pallet jack for the delivery driver or left the one "that barely work[ed] despite having a couple of good jacks in the building." [Id. at ¶¶ 26-27]. DiCienzo's email was forwarded to USPS employee Ellen Consolmagno ("Consolmagno"), who was in charge of the safety team at the Hingham Post Office. [Id. at ¶¶ 28, 55, 57]. Consolmagno did not respond to DiCienzo's pallet jack observation.

Thomas claims he separately complained to Consolmagno over email, but she did not respond. [Dkt. 36 at ¶ 55]. Consolmagno testified that it was standard procedure for USPS's safety team to inspect pallet jacks and put a "red tag" on problematic equipment to let people

3

know it was not available for use. [Id. at ¶¶ 48-49, 57]. Defendant states that if there had been a complaint about the pallet jack, Consolmagno's safety team would have inspected it, taken it out of service, and "red-tagged" it. [Id. at ¶ 55]. Consolmagno testified that the pallet jack was "old, but not defective" at the time of the incident, but Plaintiff states that, during her testimony, Consolmagno also "discussed vaguely the issue of whether the condition of the offending pallet jack had been discussed" at the Hingham Post Office. [Id. at ¶ 56]. Another USPS employee, Ronnie Wronski ("Wronski"), explained that one of his co-workers preferred the allegedly defective pallet jack and, as a member of the safety team, Wronski would have red tagged it if there was an issue. [Id. at ¶¶ 47-48]. Defendant emphasizes that Wronski stated the pallet jack was "heavier," but he could still move a pallet of magazines with it, while Thomas notes that Wronski never used the pallet jack and put it aside during the day. [Id. at ¶ 46]. Thomas also asserts that Wronski was not aware of an issue regarding the pallet jack because Consolmagno did not inform him of Plaintiff's complaint. [Id. at ¶¶ 48, 50].

On April 30, 2018, Thomas used the pallet jack at issue to transfer mail from his truck to a ramp at the Hingham Post Office. [Id. at ¶ 30]. Thomas testified that he rolled his ankle when he used the pallet jack that night. [Id. at ¶¶ 61-62]. Specifically, Thomas stated that "his foot gave out" when he was "on the last of those big boxes [of mail] trying to pull it over that hump," and he heard a "big noise." [Id. at ¶ 61]. Thomas elaborated that he felt a "big snap," and his "foot went to the side." [Id. at ¶ 62]. Thomas did not fall during the accident, completed his runs that day, and did not report the injury to USPS at the time. [Id. at ¶¶ 31-33]. He claims that he did, however, fill out an accident report for R&F at the end of that shift. [Id. at ¶ 33]. He does not provide that report for review. The parties dispute whether Thomas informed R&F of his injury on April 30, 2018, and whether Thomas continued working until May 11, 2018. [Id. at

¶¶ 33-36]. Defendant claims Thomas continued working at R&F in his usual capacity until May 11, 2018, and informed R&F of the accident on June 11, 2018. [Id. at ¶¶ 34-36]. Thomas, however, states that he was out of work for two days following the incident, returning on May 3, 2018. [Id. at ¶ 34]. Thomas acknowledges that he continued to work for R&F until May 11, 2018, but claims he relied on the help of other workers due to his injury from the incident at the Hingham Post Office. [Id.]. USPS removed the pallet jack at issue one or two years after the incident because of a problem with the wheels. [Id. at ¶ 51].

On June 11, 2018, Thomas filed a claim with the Massachusetts Department of Industrial Accidents for an injury to his lower right extremity. [Id. at ¶ 37]. On October 6, 2021, Thomas entered into a lump sum agreement with R&F's insurer. [Id. at ¶ 39]. On April 29, 2020, USPS received an administrative claim for $950,000 from Thomas, and it denied that claim on March 16, 2021. [Id. at ¶¶ 40-41]. Thomas filed this action in September 2021, alleging that Defendant was negligent by failing to follow reasonable procedures to ensure the safety of others on its premises and by failing to ensure that the equipment was in a serviceable and safe condition. [Dkt. 1 at ¶ 9, 10]. Defendant has moved for summary judgment. [Dkt. 27]. Thomas opposes Defendant's motion. [Dkt. 35].

## II.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (citation

omitted). The Court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001); see also Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006). Courts must evaluate "the record and [draw] all reasonable inferences therefrom in the light most favorable to the non-moving part[y]." Est. of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 183-84 (1st Cir. 1999)). A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted).

## III. DISCUSSION

Defendant moves for summary judgment on the basis that it did not owe Thomas a duty of care, and even if it did owe Thomas a duty, Thomas cannot show that USPS' action or inaction caused his alleged harm. [Dkt. 28 at 6, 9]. Under the FTCA, the United States may be liable for negligence causing personal injury to a plaintiff "if a private person would be liable to [the plaintiff] under 'the law of the place where the act or omission occurred.'" Quinones v. U.S. Postal Serv., No. 12-CV-10120-JGD, 2013 WL 1328343, at *6 (D. Mass. Mar. 29, 2013) (quoting 28 U.S.C. § 1346(b)(1)). The Court therefore applies Massachusetts law to evaluate Thomas' negligence claim. See id. (citing Hewitt v. United States, 550 F. Supp. 589, 591 (D. Mass. 1982)). "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage

6

resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006).

### A.   Duty of Care

Thomas alleges USPS failed "to follow reasonable procedures to ensure the safety of those persons lawfully on its premises." [Dkt. 1 at ¶ 9]. As such, the Court—and Defendant—infers that the complaint relies on premises liability to establish a duty of care here. [See Dkt. 28 at 7]. Defendant argues that it did not owe a duty of care under the premises liability theory because there is "no evidence that USPS knew that the pallet jack presented a danger to Plaintiff or anyone else," and any defect Plaintiff perceived with the pallet jack "would have been open and obvious to him" for weeks prior to his injury. [Dkt. 28 at 7-8]. Whether a party owes a duty of care is a question of law that courts may resolve on summary judgment. Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 248 (D. Mass. 2012) (citing Jupin, 849 N.E.2d at 835).

Under premises liability, "an owner or possessor of land owes a common law duty of reasonable care to all lawful visitors." Davis v. Westwood Group, 652 N.E.2d 567, 569 (Mass. 1995). That duty of care includes two obligations: (1) "to maintain the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk," and (2) "to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." Dos Santos v. Coleta, 987 N.E.2d 1187, 1192 (Mass. 2013) (citation and internal quotation marks omitted). A landowner is "not obligated to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." Lyon v. Morphew, 678 N.E.2d 1306, 1310 (Mass. 1997) (citation omitted). A landowner does not have to protect visitors from "dangers that would be obvious to

7

persons of average intelligence" and does not have a duty to warn of "open and obvious dangers." O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000).

It was common practice for USPS to provide R&F drivers a pallet jack to deliver the pallets of mail. [Dkt. 36 at ¶ 15-16]. Thomas did not have access to the area where the pallet jacks were stored and had to use those jacks available to him. [See id. at ¶¶ 21, 29]. As such, Thomas could use only whichever pallet jack the Hingham Post Office employees left out for him. Thomas repeatedly complained about the pallet jack, and USPS employee DiCienzo reported that the team at Hingham sometimes left a pallet jack "that barely work[ed] despite having a couple of good jacks in the building." [Id. at ¶ 27]. DiCienzo's statement, which is not in dispute, undermines Defendant's argument that USPS did not know the pallet jack posed a possible danger to Plaintiff or others. It is not unreasonable to conclude that a pallet jack that "barely" worked posed a foreseeable risk—and that DiCienzo's email put USPS on constructive notice of such risk—to those who had to use it to lift heavy loads of mail.

USPS continued to leave the allegedly defective pallet jack for Thomas to use despite his complaints and USPS' ability to avoid the risk of injury posed by the pallet jack simply by utilizing its system of red-tagging broken equipment. [See id. at ¶¶ 26-29, 49]. Even if Thomas was aware that the pallet jack was, old, heavy, and difficult to maneuver, it was often the one left out for him to use.[2] [Id. at ¶ 25]; see Papadopoulos v. Target Corp., 930 N.E.2d 142, 151 (Mass. 2010) (explaining that a property owner is "not relieved from remedying an open and obvious

---

[2] Defendant argues that USPS did not owe Thomas a duty to provide a pallet jack that was in "safe, serviceable, and satisfactory condition" because the premises liability duty does not extend to working equipment. [Dkt. 28 at 8 n.1]. Defendant cites to Silva v. Stop & Shop Supermarket Co. LLC, 24 N.E.3d (Table), 2015 WL 478652 (Mass. App. Ct. 2015), to support this argument. In Silva, the court determined that the defendant's failure to fix a freight elevator on the premises did not constitute a breach of duty because the elevator was not a "necessary piece of safety equipment," as argued by the plaintiff, and violations of state statute and company policies were inapplicable on the facts of the case. Silva, 2015 WL 478652, at *1. Here, Thomas claims there was no alternative available to him, and Defendant should have removed the pallet jack because of his multiple complaints. [See Dkt. 36 at ¶¶ 25, 27].

danger" where the owner "can and should anticipate that the dangerous condition will cause physical harm . . . notwithstanding its known or obvious danger" (citation omitted)). It would not have been burdensome for the Hingham Post Office to switch the allegedly defective pallet jack for a fully functional pallet jack to diminish any risk of harm. See id. at 154 (finding that the property owner had a duty of care where remedying the dangerous condition "introduce[d] no special burden"); see also Dos Santos, 987 N.E.2d at 1195-98. Defendant here owed Thomas a duty of care to avoid the risk posed by the allegedly defective pallet jack.[3]

### B. Causation

Defendant argues that even if it owed Thomas a duty of care, Thomas cannot establish causation, and the Court should therefore grant summary judgment in its favor. [Dkt. 28 at 9]. Specifically, Defendant argues that Thomas cannot show that it was the but-for, or factual, cause of Thomas' harm. [Id.].

Causation involves two components: "the defendant had to be both a factual cause . . . and a legal cause of the harm." See Doull v. Foster, 163 N.E.3d 976, 982-83 (Mass. 2021) (citation omitted). "Generally, a defendant is a factual cause of a harm if the harm would not have occurred 'but for' the defendant's negligent conduct," that is, "the defendant's conduct was necessary to bringing about the harm." Id. at 983. The legal cause of the harm "means that the harm must have been within the scope of the foreseeable risk arising from the negligent

---

[3] In his opposition, Thomas also suggests that the Court can infer a duty of care because of the "special relationship" between Thomas and Defendant. [See Dkt. 35 at 6]. Because the Court finds that Defendant owed Thomas a duty of care under a premises liability theory, it need not address that issue.

conduct." Id.  Causation is "generally consider[ed] . . . to be the special province of the jury." Jupin, 849 N.E.2d at 835.

Thomas perceived that the pallet jack was "very old and heavy, was rusty, didn't roll well because of 'old hydraulics,' was 'hard to pull' and lacked rubber on one part of the handle." [Dkt. 36 at ¶ 22].  Thomas claims he rolled his ankle because he was struggling to pull the pallet jack loaded with mail over a "hump" on the property.  [Id. at ¶¶ 61-62].  He explains that he "went to give it the extra pull," felt a "big snap" in his foot, and his foot "went to the side."  [Id. at ¶ 62].  Another USPS employee also stated that the "pallet jack at issue was heavier than newer ones," and a second employee acknowledged that a pallet jack at the Hingham post office "barely work[ed]."  [Id. at ¶¶ 27, 46].  Defendant, in turn, provides evidence that other employees at the Hingham Post Office, including members of the safety team, did not believe the pallet jack was unsafe or defective; no one else had voiced any concerns about the pallet jack around the time of Thomas' injury; and another employee preferred the allegedly defective pallet jack.  [Id. at ¶¶ 47-50, 55-56, 59-60].  Defendant argues that the cause of Thomas' injury that night "seems to be the size of the box and the hump that existed on the property."  [See Dkt. 28 at 11].  Either cause is possible here—a factfinder could conclude that Thomas' injury would not have occurred if the pallet jack rolled properly and could just as easily conclude that Thomas' own actions caused his injury.

This conflicting evidence—and whose testimony to credit—creates a genuine issue of material fact regarding the cause of Plaintiff's injury that is best evaluated by a jury.  See Billings v. Town of Grafton, 515 F.3d 39, 56 (1st Cir. 2008) ("But we think that, under the circumstances of this case, it is the jury that must make this decision, one way or the other."); Arraj v. United States, 95 F. Supp. 3d 150, 158 (D. Mass. 2015) (stating that "[o]nly where no

view of the evidence could warrant a jury in finding the defendant negligent can it be held as a matter of law that the plaintiffs cannot recover"). Even if the Court perceives some of the evidence as stronger than other evidence in the record, it is not appropriate for the Court to decide the matter at this stage. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [Dkt. 27] is **DENIED**.

**SO ORDERED.**

Dated: May 9, 2023                                     /s/ Angel Kelley
                                                      Hon. Angel Kelley
                                                      United States District Judge